Filed 6/11/15  In re C.M. CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re C.M., a Person Coming Under the Juvenile Court Law. | |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY, | D066824 |
| Plaintiff and Respondent, | (Super. Ct. No. J515893C) |
| v. | |
| J.M., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of San Diego County, Michael J. Martindill, Juvenile Court Referee.  Affirmed.

Cristina Gabrielidis, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas E. Montgomery, County Counsel, John E. Philips, Chief Deputy County Counsel, and Patrice Plattner-Grainger for Plaintiff and Respondent.

The juvenile who is the subject of this case, C.M., was placed in foster care at birth. From the time C.M. was born until she was six years old, she was intermittently in the care of her mother, defendant and appellant J.M. (mother). When C.M. was six years old, her long-term foster parents were made her guardians. One year later, at the time of the order terminating mother's parental rights over C.M., mother had not visited C.M. in six months.

Where, as here, reunification has failed and a dependent child is adoptable, parental rights must be terminated. (Welf. & Inst. Code,[1] § 366.26, subd. (c).) Given what was, at best, an intermittent relationship between mother and child, and contrary to mother's argument on appeal, this is not a case in which the trial court was required to apply the "beneficial relationship" exception (§ 366.26, subd. (c)(1)(B)(i)) to the required termination of mother's parental rights. (See *In re Autumn H.* (1994) 27 Cal.App.4th 567, 575-577 (*Autumn H.*).)

BACKGROUND

1. 2007-2009

Mother and her husband are Sudanese immigrants and, on February 11, 2007, mother gave birth to C.M., their third child. When C.M. was born, her two older siblings, 10-year-old P. and one-year-old E., were dependents and had been detained in foster care due to domestic violence between mother and her husband and extreme corporal punishment P. had endured; on February 14, 2007, plaintiff and respondent San Diego

---

[1] All further statutory references are to the Welfare & Institutions Code.

2

County Health and Human Services Agency (the agency) filed a sibling petition under section 300, subdivision (j) with respect to C.M., and C.M. was placed in foster care.

Two weeks after C.M.'s birth, the initial petition was dismissed and C.M. was returned to her mother. However, six months later, in August 2007, a second petition was filed with respect to C.M. At that point, mother had regained custody of her two older children and had resumed a pattern of physical abuse of the older siblings and excessive alcohol consumption. C.M. was detained in foster care.

In 2009, P. was in long-term foster care, mother's parental rights over E. had been terminated and his foster parents were planning to adopt him, and C.M. was in foster care with E. In August 2009, because mother had been making progress on the alcohol and domestic violence issues that were a risk to C.M., C.M. was returned to mother's care.

2. 2009-2013

Between 2009 and 2013, mother left C.M. with her foster parents, where her older brother, E., was also living, for lengthy periods of time. In April 2013, the agency filed a third dependency petition with respect to C.M. The petition alleged that mother had repeatedly left C.M. with her foster parents and failed to return as promised and that C.M. had been living with the foster parents continuously since August 2012.

The trial court sustained the third petition and detained C.M. with the foster parents. With the consent of mother, the foster parents were made C.M.'s guardians.

3. 2014

By 2014, the foster parents had successfully adopted E., P. had moved in with them and they had become P.'s guardians. The foster parents advised the agency they

3

wished to adopt C.M., and the agency filed a petition under section 388 that sought adoption as the permanent plan for C.M. The trial court set the matter for a contested hearing under section 366.26.

At the October 2014 contested hearing, although the trial court had agreed mother could appear telephonically, her counsel was unable to reach her. C.M.'s father did not appear at the hearing. The agency presented an assessment report which indicated that mother had not visited C.M. in six months and that her last visit had been two hours long. The foster mother reported that although mother calls the children fairly regularly, C.M. does not appear to be engaged in those conversations and usually gives her mother only one word answers. When asked her preference as to her care, C.M. fairly emphatically indicates she would like to stay with her foster parents. The foster mother reported that C.M. is aware that her older sibling, E., has been adopted by her foster parents and she feels left out.

The trial court found that C.M. is adoptable and that none of the exceptions to termination of parental rights applies. Accordingly, the trial court terminated the parental rights of mother and her husband. Mother filed a timely notice of appeal.

## DISCUSSION

On appeal, mother argues the trial court should have applied the beneficial relationship exception to the termination of parental rights otherwise required by section 366.26, subdivision (c). (See § 366.26, subd. (c)(1)(B)(i).) That exception provides that the termination of parental rights need not be ordered when "[t]he court finds a compelling reason for determining that termination would be detrimental to the child due

4

to one or more of the following circumstances:  [¶]  (i)  The parents have maintained regular visitation and contact with the child and the child would benefit from continuing the relationship."  (§ 366.26, subd. (c)(1)(B)(i).)

We described the substantive requirements of this statutory exception in *Autumn H.*, *supra*, 27 Cal.App.4th at page 575:  "In the context of the dependency scheme prescribed by the Legislature, we interpret the 'benefit from continuing the [parent/child] relationship' exception to mean the relationship promotes the well-being of the child to such a degree as to outweigh the well-being the child would gain in a permanent home with new, adoptive parents.  In other words, the court balances the strength and quality of the natural parent/child relationship in a tenuous placement against the security and the sense of belonging a new family would confer.  If severing the natural parent/child relationship would deprive the child of a substantial, positive emotional attachment such that the child would be greatly harmed, the preference for adoption is overcome and the natural parent's rights are not terminated.  [¶]  Interaction between natural parent and child will always confer some incidental benefit to the child.  The significant attachment from child to parent results from the adult's attention to the child's needs for physical care, nourishment, comfort, affection and stimulation.  (See Goldstein et al., Beyond the Best Interests of the Child (1973) p. 17.)  The relationship arises from day-to-day interaction, companionship and shared experiences.  (*Id.* at p. 19.)  The exception applies only where the court finds regular visits and contact have continued or developed a significant, positive, emotional attachment from child to parent."

We review a trial court's ruling on application of the beneficial relationship

5

exception for abuse of discretion.  (*In re Jasmine D.* (2000) 78 Cal.App.4th 1339, 1351.)
Nothing in the record here meets the requirements set forth on the face of the statute and
as we described in *Autumn H.*  Unfortunately, the record shows that mother has not
maintained regular visitation with C.M., has been largely absent from her daughter's life
and her occasional telephone contact with C.M. has not established anything approaching
the significant emotional attachment required for application of the beneficial relationship
exception.  As mother notes in her brief, because C.M.'s heritage is Sudanese and her
foster parents are native born Caucasians, her Sudanese mother had a great deal of
cultural heritage and resources to share with C.M., as well as with all her children.
However, those potential cultural benefits do not outweigh the need for this child to have
adoptive bonds to the family that is caring for her and has adopted her brother.

DISPOSITION

The order is affirmed.

BENKE, J.

WE CONCUR:

McCONNELL, P. J.

HALLER, J.